UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-3568(DSD/BRT)

Leparis D. Young, Maureen
O'Shaughnessy Young, as
Trustees of the Leparis D.
Young Revocable Trust;
Maureen O'Shaughnessy Young,
Leparis D. Young, as Trustees
of the Maureen O'Shaughnessy
Young Revocable Trust; John
F. O'Shaughnessy, Jr.; and
MTerra Ventures, LLC,

      Plaintiffs,

v.                                          **ORDER**

ECTG Limited,

      Defendant.

    John Rock, Esq., Bruce L. Gisi, Esq. and Rock Law LLC, 120 South Sixth Street, Suite 2050, Minneapolis, MN 55402, counsel for plaintiffs.

    Peter D. Gray, Esq., Stanley E. Siegel, Jr., Esq. and Nilan, Johnson, Lewis PA, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by plaintiffs Leparis D. Young and Maureen O'Shaughnessy Young, as trustees of the Leparis D. Young Revocable Trust and the Maureen O'Shaughnessy Young Revocable Trust, John F. O'Shaughnessy, Jr., and mTerra Ventures, LLC (collectively, plaintiffs). Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

**BACKGROUND**

This loan dispute arises out of the commercial relationship between plaintiffs and defendant ECTG Limited. ECTG is a holding company that does business as Trustwater Ltd. and Trustwater USA, Inc. On June 26, 2009, plaintiffs and ECTG entered into a Bridge Loan Agreement (Agreement) providing for the sale and purchase of convertible promissory notes from ECTG to plaintiffs. John O'Shaughnessy, Jr. Decl., Ex. 2. Among other things, the Agreement provides that the parties will enter into separate convertible promissory notes through which individual plaintiffs agreed to loan money to ECTG. See id. ¶¶ 1-2. Consistent with the Agreement, the parties executed the following six promissory notes (collectively, Notes):

(1) June 26, 2009, note between ECTG and Leparis D. Young Revocable Trust for $50,000, Maureen O'Shaughnessy Young Decl. Ex. 1;

(2) June 26, 2009, note between ECTG and Maureen O'Shaughnessy Young Revocable Trust for $100,000, id. Ex. 3;

(3) June 26, 2009, note between ECTG and John O'Shaughnessy, Jr. For $306,122.44, John O'Shaughnessy, Jr. Decl., Ex. 1;

(4) June 26, 2009, note between ECTG and mTerra Ventures for $500,000, Mars Decl. Ex. 1;

2

(5) July 10, 2009, note between ECTG and the Leparis D. Young Revocable Trust for $100,000, Maureen O'Shaughnessy Young Decl. Ex. 2; and

(6) July 10, 2009, note between ECTG and the Maureen O'Shaughnessy Young Revocable Trust for $400,000, Maureen O'Shaughnessy Young Decl. Ex. 4.

It is undisputed that the Notes contain identical terms and conditions, save the amount of each loan. All Notes matured on December 27, 2010, at which time ECTG was obligated to repay each Note's principal with interest. See id. at 1. In the event of long-term financing, the Notes would convert into equity shares and ECTG's obligation under the Notes would be extinguished. Id. § 2.1. It is undisputed that ECTG did not secure long-term financing. ECTG admits that it defaulted on the Notes by failing to make payments when due. See id. § 3(b).

ECTG alleges that plaintiffs and others - including former ECTG executives, shareholders, board members, and employees - conspired to form a competing business using ECTG's patented technology. The alleged conspiracy is the subject of a separate lawsuit pending before this court. See ECTG Limited, et al. v. O'Shaughnessy, et al., Case No. 14-960 (DSD/BRT). For purposes of this case, ECTG relies heavily on a post-default document

3

identifying a list of "[o]pportunities" including "PUT TW[1] OUT OF BUSINESS THROUGH DEFAULT/LIQUIDATION BY O'S." O'Reilly Aff. Ex. 15, at 2. According to ECTG, this language evinces plaintiffs' intent to financially ruin ECTG so their competing business could succeed. It appears that John O'Shaughnessy was the recipient of the document via email, but there is no indication that other plaintiffs received the document. See id. Ex. 14, at 1.

ECTG asserts that, in furtherance of the conspiracy, plaintiff John O'Shaughnessy, an ECTG board member, abstained from a key board vote, which would have secured third-party financing for ECTG and enabled ECTG to pay back the amounts due under the Notes. Although John O'Shaughnessy did abstain from the vote, the rest of the board approved the proposed financing term sheet. Id. Ex. 5. ECTG opines that the abstention caused the third party to ultimately decline to extend financing to ECTG, but there is no corroborating evidence in the record.[2] Nor is there actual evidence that John O'Shaughnessy's abstention was part of a larger conspiracy to bankrupt ECTG. ECTG nevertheless argues that the

---

[1] ECTG posits, without challenge, that "TW" refers to Trustwater.

[2] At oral argument, ECTG provided the court with an email from the third party requesting additional information about John O'Shaughnessy's abstention. Plaintiffs objected to the email as hearsay. Even if admissible, the email does not establish the reason the financing fell through. To the contrary, the email shows that the parties were merely in the early stages of due diligence and that the third-party had additional concerns.

conspiracy caused, or at least should excuse, its admitted default on the Notes.

On December 18, 2013, plaintiffs filed suit against ECTG. Two days later, plaintiffs filed an amended complaint, alleging two counts of breach of contract; the first alleges breach of the Notes and the second alleges breach of the Agreement. Plaintiffs move for summary judgment on count I.[3]

## DISCUSSION

**I. Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere

---

[3] Plaintiffs will move to dismiss count II if the court grants this motion. Pl.'s Mem. at 2 n.2.

denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II.  Breach of Contract

Plaintiffs argue that they are entitled to summary judgment because it is undisputed that ECTG defaulted on the Notes. ECTG does not deny that it breached its obligation under the Notes, but asserts several defenses.

### A.   Implied Covenant of Good Faith and Fair Dealing

ECTG first argues that its default is excused because plaintiffs breached the implied covenant of good faith and fair dealing by conspiring against ECTG. The parties agree that Delaware law applies to this argument based on the choice-of-law provision in the Agreement and Notes. See, e.g., John O'Shaughnessy, Jr. Decl. Ex. 1 § 4.3; id. Ex. 2 § 10(j). Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract. Winshall v. Viacom Int'l, Inc., 55 A.3d 629, 636 (Del. Ch. 2011). The covenant involves a "cautious

enterprise, inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." Nemec v. Shrader, 991 A.2d 1120, 1125 (Del. 2010) (quotation and citation omitted); see also In re Fed.-Mogul Global, Inc., Nos. 10-986, 11-813, 2015 WL 510951, *7 (D. Del. Feb. 5, 2015) ("Only when it is clear from the contract that the parties would have agreed to proscribe the act later complained of, had they thought to negotiate it, may a party invoke the protections of the covenant."). "[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement." Nemec, 991 A.2d at 1125-26. Courts "will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." Id. at 1126.

ECTG argues that this standard is met because plaintiffs conspired to "breach fiduciary duties and destroy the company before permanent financing was obtained." Def.'s Opp'n Mem. at 17. The court disagrees. As an initial matter, ECTG does not point to any "gap" in the contract that neither party anticipated  Thus, it is doubtful whether the implied covenant applies at all in this instance. Indeed, the "covenant is not a catch-all to prevent any injustice." In re Fed.-Mogul Global, 2015 WL 510951, at *7.

Even if applicable, ECTG fails to support its allegations with specific facts establishing the conspiracy, each plaintiff's role in the conspiracy, and, most importantly, the connection between the conspiracy and ECTG's default on the Notes.[4]  ECTG relies on two discrete facts in support of its position.  ECTG first points to the following notation:  "PUT TW OUT OF BUSINESS THROUGH DEFAULT/LIQUIDATION BY O'S."  O'Reilly Decl. Ex. 15, at 2.  The document containing the notation appears to have been created, or at least distributed, months after ECTG defaulted, and there is no indication that any plaintiff apart from John O'Shaughnessy received the document.[5]  Nor is there any indication that any of the plaintiffs authored the document.  Under these circumstances, the court cannot conclude that the notation is sufficient to establish a violation of the implied covenant of good faith and fair dealing.  This is particularly true because ECTG has not alleged each plaintiff's involvement in the notation or, indeed, the broader conspiracy.[6]  Even if additional details were provided,

---

[4]   In discussing the conspiracy issue as set forth in this case, the court does not comment on the merits of the other lawsuit, which is far broader and involves tort rather than contract claims.

[5]   For purposes of this motion only, the court will assume that the underlying evidence is authentic and admissible.

[6]   ECTG concedes that plaintiff mTerra Ventures, LLC was not part of the alleged conspiracy. See ECF No. 59 ¶ 4 ("Plaintiffs in this case (except mTerra Ventures), and others, engaged in a conspiracy to destroy ECTG."

the notation simply evinces an intent to collect on the Notes, which plaintiffs are legally entitled to do in the event of default. Although the additional reference to putting ECTG out of business may well evince bad intent, such intent does not prevent plaintiffs from pursuing legally appropriate remedies under the Notes. See Nemec, 991 A.2d at 1125-26.

John O'Shaughnessy's decision to abstain from the board vote is similarly unavailing. As noted, the record does not support a finding that his abstention caused the permanent financing to fall through. Given the absence of any evidence that plaintiffs thwarted ECTG's ability to pay on the Notes, the court cannot conclude that plaintiffs breached the implied covenant of good faith and fair dealing.

ECTG argues that it will be able to fill in the evidentiary gaps if it is permitted to engage in further discovery, but it fails to articulate specific facts it hopes to uncover relating to the Notes and the instant case. Rather, ECTG generally contends that additional discovery is necessary to develop more facts regarding the conspiracy as a whole. This contention is insufficient in the context of this narrow contract case.

**B.    Frustration of Purpose**

ECTG next argues that its default should be excused under the doctrine of frustration of purpose. Under Delaware law,

> [w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by

9

> the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.

Wal Mart Stores, Inc. v. AIG Life Ins. Co., 901 A.2d 106, 113 (Del. 2006).  According to ECTG, plaintiffs frustrated the principal purpose of the Notes by thwarting ECTG's ability to secure long-term financing.  As discussed, ECTG has failed to establish that theory as a matter of law.  Furthermore, plaintiffs fulfilled the principal purpose of the Notes by lending ECTG the money, as promised.  As a result, ECTG's frustration-of-purpose defense fails.

**C. Setoff**

ECTG next argues that summary judgment is inappropriate under the doctrine of setoff.  Specifically, ECTG argues that because plaintiffs will owe substantial damages exceeding those at issue here when ECTG prevails in the other lawsuit, it would be unjust to require ECTG to pay plaintiffs in this case.  The parties disagree as to whether Delaware or Minnesota law applies to this argument.  The court need not resolve the choice-of-law issue, however, because under either state's law, setoff is not permitted when based on a theoretical, unliquidated claim for damages. See CanCan Dev., LLC v. Manno, No. 6283, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) ("A contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off."); Firstar

Eagan Bank, N.A. v. Marquette Bank Minneapolis, N.A., 466 N.W.2d 8, 12 (Minn. Ct. App. 1991)("The prerequisites to setoff, which involves the extinction of mutual debts" include "mutuality of obligation" and "existing indebtedness" that is "due and owing at the time of the setoff.").

Here, there is no mutual debt. ECTG's setoff argument is contingent on a finding of liability in the other lawsuit, which is in the early stages of discovery. Absent a judgment against plaintiffs in that suit, plaintiffs owe no amounts to ECTG. Under these circumstances, the court cannot conclude ECTG is entitled to a setoff.

### D.   Rule 56(d)

ECTG also argues that summary judgment is premature because discovery is ongoing and plaintiffs have engaged in the spoliation of evidence. "A party opposing summary judgment who believes that [it] has not had an adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56[d], which requires the filing of an affidavit with the trial court showing what specific facts further discovery might unveil." Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) (citation and internal quotation marks omitted). ECTG filed an affidavit, but, as noted, has not identified specific facts that discovery would reveal in support of the claims at issue in this case. ECTG argues that further discovery may reveal that

11

the conspiracy began before the Notes were executed. Even if true, however, ECTG fails to explain how an earlier begun conspiracy caused its default on the Notes.

The court also notes that ECTG has not filed any discovery motions, including motions for sanctions, despite a fast-approaching discovery and non-dispositive deadline of April 1, 2015. ECF No. 44, at 2. Motion practice is the proper avenue to challenge a party's failure to meet its discovery obligations. The court will not entertain such motions now. As a result, ECTG's argument under Rule 56(d) is unavailing, and the court may properly consider summary judgment at this stage of the proceedings.

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment [ECF No. 48] is granted;

2. Plaintiffs are entitled to recover the principal and interest due and owing on the Notes, as set forth above; and

3. Defendant's motion to stay proceedings [ECF No. 63] is denied as moot.

Dated:  March 19, 2015

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court